# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| LIMA USA, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-09-048 |
| | ) | PRW CCLD |
| | ) | |
| DR. MOHAMED MAHFOUZ, | ) | |
| DR. EMAM ELHAK ABDEL FATAH, and | ) | |
| DR. JOSEPH MICHAEL JOHNSON, JR., | ) | |
| Defendants. | ) | |

Submitted: August 5, 2021
Decided:  August 31, 2021
Withdrawn and Reissued With Clarifications: December 3, 2021

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Defendants Dr. Mohamed Mahfouz, Dr. Emam Elhak Abdel Fatah, and
Dr. Joseph Michael Johnson, Jr.'s Motion to Dismiss*,
**GRANTED**.

*Upon Plaintiff Lima USA, Inc.'s Motion to Stay Proceeding*,
**DENIED**.

David E. Wilks, Esquire, Scott B. Czerwonka, Esquire, WILKS LAW, LLC, Wilmington, Delaware; Jordan E. Stern, Esquire, William H. Newman, Esquire, BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI, LLP, New York, New York. *Attorneys for Plaintiff Lima USA, Inc.*

Catherine A. Gaul, Esquire, ASHBY & GEDDES, Wilmington, Delaware; David B. Anthony, Esquire, BERGER HARRIS LLP, Wilmington, Delaware; Beth A. Bryan, Esquire, TAFT STETTINIUS & HOLLISTER, LLP, Cincinnati, Ohio. *Attorneys for Defendants Dr. Mohamed Mahfouz, Dr. Emam Elhak Abdel Fatah, and Dr. Joseph Michael Johnson, Jr.*

**WALLACE, J.**

On August 31, 2021, the Court issued an opinion on the parties' cross-motions to dismiss and to stay. That Opinion ordered dismissal of both claims brought in the complaint and refused the attempt to stay the litigation here to allow those claims to ripen.

The unsuccessful plaintiff filed a timely Motion for Clarification under this Court's Civil Rule 59(e). "A motion for clarification may be granted where the meaning of what the Court has written is unclear."[1] Having considered the request for clarification and the opposition thereto, the Court recognizes the value of some greater precision on one discrete point, hereby withdraws its August 31, 2021 Opinion, and issues in substitution this Opinion.

## I. INTRODUCTION

This dispute between the plaintiff medical technology corporation, Lima USA, Inc., and the defendant medical device designers, Dr. Mohamed Mahfouz, Dr. Emam Elhak Abdel Fatah, and Dr. Joseph Michael Johnson, Jr. (collectively, "Sellers"), is about whether Sellers must indemnify Lima for losses it says it now expects to bear as the result of alleged misrepresentations made by Sellers regarding the ownership of intellectual property ("IP") that Lima invested in.

---

[1] *State ex rel. French v. Card Compliant, LLC*, 2018 WL 4183714, at *5 (Del. Super. Ct. Apr. 30, 2018); *R. Keating & Sons, Inc. v. Huber*, 2020 WL 975435, at *2 (Del. Super. Ct. Feb. 27, 2020) (citing *Card Compliant*, 2018 WL 4183714, at *4); *New Castle County. v. Pike Creek Recreational Services, LLC*, 2013 WL 6904387, (Del. Ch. Dec. 30, 2013) (citing *Naughty Monkey LLC v. MarineMax Northeast LLC*, 2011 WL 684626, at *1 (Del Ch. Feb. 17, 2011)).

According to Lima, if a contemplated challenge to its exclusive ownership of the acquired IP is successful, Sellers are required to indemnify it for the resulting losses based on an Indemnity Letter the parties entered into when solidifying their relationship. Lima claims both that the Indemnity Letter requires Sellers to indemnify it for losses that result directly from a third-party claim and that, because Sellers breached the representations within the Indemnity Letter itself, Sellers are required to indemnify any losses resulting therefrom.

The Indemnity Letter includes a clause providing that its representations, warranties, and related rights to indemnification would terminate twenty-four months after the agreement date—more specifically, September 5, 2020. Lima received a letter from a third-party on August 26, 2020, notifying it that the IP Lima purchased allegedly infringed that third party's IP. Lima filed this action against Sellers on September 4, 2020. It said it only did so to preserve its protections under the Indemnity Letter. But to date, no third-party action has been brought against Lima over the subject IP.

Before the Court now are Lima's Motion to Stay this action until the resolution of that *potential* third-party action, and Sellers' competing Motion to Dismiss. Sellers contend that, because no action disputing Lima's exclusive ownership of the IP has commenced, Lima's claims are unripe, fail to state a claim for which relief can be granted, and that Lima lacks standing to bring them. Having

considered the record and the parties' arguments, the Court concludes that Lima's claims shouldn't be stayed, but should instead be dismissed.

Each of Lima's allegations are contingent on future events that have not and may never occur. Those claims, then, are unripe and must be dismissed for the Court's lack of subject matter jurisdiction.

And because there is no underlying litigation for the Court to await resolution of, there is no real basis to stay this action. Indeed, a stay of this action would not only visit inefficiency on the Court, but it also would prejudice Sellers by removing the very temporal limitation on liability they properly bargained for. And so, the Court declines to grant Lima's requested stay to await the suit that hasn't and might never come.

In sum, Lima's Motion to Stay is **DENIED,** and Sellers' Motion to Dismiss is **GRANTED.**

## II. FACTUAL BACKGROUND

### A. THE PARTIES

Sellers are Tennessee residents. They are also members of Techmah Medical LLC, a Delaware limited liability company with its principal place of business in Tennessee.[2] Techmah's principal assets are technologies that aid doctors in

---

[2] Compl. ¶¶ 6-9, September 11, 2020 (D.I. 1).

performing surgeries on shoulders and knees ("TechMah IP").[3] Lima is a Texas corporation that invested in Techmah.[4]

## B. THE INVESTMENT AND INDEMNITY LETTER

In 2018, Lima agreed to invest in Techmah and, in connection with the investment, Lima and Sellers signed the Indemnity Letter on September 5, 2018.[5] Of the numerous representations Sellers made in the Indemnity Letter only Sellers representations about Techmah's ownership of the TechMah IP and Techmah's ability to use the TechMah IP free of claims from third parties are relevant here.[6] Sellers made a number of promises in the Indemnity Letter as well. These promises include indemnifying Lima for any losses arising from:

> (c) any claim asserted by any Person to any right, title or interest in or to any assets of [Techmah] . . . including without limitation:
>
> > i. by (x) Zimmer, Inc. (together with any assignee or successor entity thereof, "Zimmer") with respect to any intellectual property rights were transferred by Dr. Mahfouz or by any Affiliate thereof in the 2011 Zimmer Transactions (as defined below), or (y) Zimmer or Joint Vue, LLC in respect of patents which name Dr. Mahfouz as an inventor and were transferred to either such party[. . . .][7]

---

[3] The same IP as referenced above that the dispute revolves around. Compl. ¶ 1.

[4] Compl. ¶¶ 1, 5.

[5] Compl. ¶ 11; Lima's Mot. to Stay, Ex. A at 1 (hereinafter "Indemnity Letter"), Feb. 5, 2021 (D.I. 12).

[6] Compl. ¶ 13. *See also* Indemnity Letter ¶¶ 12, 13, and 20.

[7] Indemnity Letter § (A)(2)(C); Compl. ¶ 12. *See generally* Indemnity Letter § (A)(2).

The Indemnity Letter also provided that "[a]ll representations and warranties and all related rights to indemnification shall survive the consummation of the Transaction and shall terminate upon the date that is twenty-four (24) months following the date hereof . . ."[8] So all its representations and warranties and related rights to indemnification expired September 5, 2020.

## C. THE ZIMMER LETTER

On August 26, 2020, counsel for Zimmer Biomet sent a letter ("Zimmer Letter") to Limacorporate S.p.A.'s[9] CEO, Luigi Ferrari.[10] The Zimmer Letter expressed Zimmer's concern that Lima's use of the TechMah IP infringed on Zimmer's intellectual property.[11] Specifically, the Zimmer Letter alleges Lima's use of the TechMah IP infringes the technology that Dr. Mahfouz sold to Zimmer in 2011.[12] And the Zimmer Letter requested that Lima:

> [I]mmediately cease and desist commercialization and use of the Smart SPACE platform unless and until (1) it removes Zimmer Biomet's proprietary technology and confidential information used in the technology and (2) it receives a license to the Zimmer Biomet patent

---

[8]   Indemnity Letter § (B).

[9]   Lima USA, Inc.'s international parent corporation. *See About Lima USA*, LIMACORPORATE, https://limacorporate.com/en/subsidiary-detail/28/lima-usa.html (last visited June 26, 2021).

[10]   Compl. ¶ 15; *Id.*, Ex. A at 1 (hereinafter "Zimmer Letter").

[11]   *Id.* ¶ 16; Zimmer Letter at 1.

[12]   *Id.*

described below. [Zimmer] request[s] [Lima] immediately provide Zimmer Biomet with written confirmation that it will cease and desist these infringing activities.[13]

Zimmer closes saying:

> We look forward to the written confirmation we request above from you and hope we can settle this matter amicably. However, nothing in this letter should be construed as a waiver of Zimmer Biomet's rights under its agreements with Dr. Mahfouz and TechMah, or under applicable law. We will pursue other avenues of protecting our intellectual property if we do not hear from you by September 16, 2020.[14]

### D. LIMA'S CLAIMS IN THIS ACTION

Upon receiving the Zimmer Letter—and with only a few days until the expiration date of the representations and related indemnity provisions of the Indemnity Letter—Lima asked that Sellers agree to toll the expiration date to preserve any rights for losses that could arise from the Zimmer Letter.[15] Sellers refused and Lima filed this suit here on September 4, 2020.[16]

Lima pens two causes of action in its Complaint.

---

[13] *Id.*

[14] *Id.* at 3.

[15] Lima's Mot. to Stay ¶ 6.

[16] *Id. See generally* Compl.

In Count I, Lima claims breach of contract and seeks indemnification for the statements made in the Zimmer Letter.[17]  In this count, Lima pleads that "[i]f Zimmer prevails on the merits of the Zimmer Claims, the Indemnity Letter requires Sellers to indemnify Lima for any losses arising from those claims."[18]

Count II, Lima fashions as a claim for Indemnification for Breach of Representations made in the Indemnity Letter.[19]  There, Lima writes:

> If Zimmer prevails on the merits of the Zimmer Claims, then the Sellers have not performed their obligations pursuant to the Indemnity Letter.[20]
>
>    *     *     *
>
> If Zimmer prevails on the merits of the Zimmer Claims, then the Sellers materially breached their obligations pursuant to the Indemnity Letter by falsely representing that Techmah owned the intellectual property identified therein and that Techmah could use that intellectual property free of infringement claims.[21]
>
>    *     *     *
>
> And if Zimmer prevails on the merits of the Zimmer Claims, the Indemnity Letter requires the Sellers to indemnify Lima for any losses arising from those false representations.[22]

---

[17]  Compl. ¶¶ 19-23.

[18]  *Id.* ¶ 22.

[19]  *Id.* ¶¶ 24-30.

[20]  *Id.* ¶ 27.

[21]  *Id.* ¶ 28.

[22]  *Id.* ¶ 29.

On December 31, 2021, Lima requested an extension of time to serve Sellers with its Complaint. The Court granted that request[23] and Lima served its Complaint on Sellers on January 12, 2021.[24]

## III. THE PARTIES' CONTENTIONS

### A. LIMA'S MOTION TO STAY.

On February 5, 2021, Lima filed its Motion to Stay with this Court, requesting that the Court stay this action until the potential claims suggested by the Zimmer Letter are resolved.[25] According to Lima, the extent of its liability to Zimmer and its damages in this action, if any, are not calculable until resolution of the Zimmer Letter "claims."[26] And Lima admits that it "filed this action to avoid being barred by the limitation period in the Indemnity Letter."[27]

Lima incants the broad discretion of trial courts to manage their dockets and mentions this Court's ordinary factoring of the "practical considerations that make it unduly complicated, inefficient, and unnecessary for the action before it to proceed

---

[23] Lima's Mot. for Enlargement of Time for Service of Defs., Dec. 31, 2020 (D.I. 3); Order Granting Mot. for Enlargement of Time for Service of Defs., Jan. 2, 2021 (D.I. 4).

[24] Writs Issued, Jan. 15, 2021 (D.I. 5).

[25] Lima's Mot. to Stay ¶ 13.

[26] Lima's Mot. to Stay ¶ 9.

[27] *Id*. ¶ 13.

ahead or apace of a related litigation pending elsewhere."[28]  And, Lima says, it would not make sense to proceed with this litigation until the issues raised in the Zimmer Letter are resolved.  So, in Lima's view, this action should be stayed as a matter of efficiency.[29]

Not surprisingly, Sellers take a very different view.  They respond first by distinguishing the three cases Lima cites in support of its stay request.

First, Sellers call out Lima's reliance on *Americas Mining Corp. v. Theriault*[30] for the proposition that trial judges have broad discretion to manage their dockets *and* grant stays of litigation.[31]  As Sellers correctly note, while therein the Delaware Supreme Court recognized trial judges' discretion over their dockets,[32] *Americas Mining* did not involve a stay of litigation.

Next, Sellers turn to Lima's reliance on *Brenner v. Albrecht*[33] and *Yellow Pages v. Ziplocal*[34]—observing that those cases involved active underlying litigation

---

[28]  *Id*. ¶ 11 (quoting *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012)).

[29]  *Id*. ¶¶ 12-13.

[30]  51 A.3d 1213 (Del. 2012).

[31]  Sellers' Opp'n to Mot. to Stay ¶ 11, Feb. 17, 2021 (D.I. 25).

[32]  *Id.*

[33]  2012 WL 252286 (Del. Ch. Jan. 27, 2012).

[34]  2015 WL 358279 (Del. Super. Ct. Jan. 27, 2015).

and defendants seeking to stay the respective plaintiff's actions.[35]  Sellers note that here:  (1) there is no underlying proceeding because the Zimmer Letter doesn't set forth any claims; and (2) Plaintiff Lima seeks to stay its own litigation before Sellers have even responded to the Complaint.[36]

As a final matter, Sellers contend that the only practical consideration Lima identifies is the absence of any active dispute to litigate.  That, says Sellers, warrants dismissal, not a stay.[37]  Sellers also suggest that the issuance of a stay for Lima would prejudice them as a stay would delay their rights to "extricate themselves from a defective lawsuit."[38]

## B. SELLERS' MOTION TO DISMISS

Sellers assert that Lima's Complaint should be dismissed because it both fails to allege a justiciable controversy and fails to state a claim upon which relief can be granted.[39]

According to Sellers, Lima's failure to allege a justiciable controversy is three-fold.  *First*, Sellers say, because Zimmer has yet to bring a suit, Lima's claims

---

[35]  Sellers' Opp'n to Mot. to Stay ¶¶ 12, 14.

[36]  *Id.* ¶ 13.

[37]  *Id.*

[38]  *Id.*

[39]  Sellers' Mot. to Dismiss at 5, Feb. 11, 2021 (D.I. 16).

rely on an "uncertain and contingent event that may not occur."[40] *Second*, Sellers insist, Lima failed to present any indemnifiable losses to Sellers, and until Lima presents such losses to Sellers and Sellers then refuse to indemnify Lima, there is no breach dispute for the Court to resolve.[41] *Third*, Sellers argue that Lima's failure to allege that it has incurred or will immediately incur a loss is fatal to its suit because: (1) the Complaint is not ripe since it "would necessarily be premised on uncertain and hypothetical facts;"[42] and, (2) this absence of loss means that Lima lacks standing to now bring its case because it can't plead or prove the required injury in fact.[43] That is, Lima identifies no injury for the Court to redress.

Sellers contend too that as the Complaint fails to plead: "(i) that Zimmer made a claim, (ii) that Lima incurred any losses, (iii) that Lima ever presented indemnifiable losses to the Sellers, and (iv) that the Seller's refused to indemnify Lima," the Complaint fails to state any claim for breach of the Indemnity Letter.[44]

---

[40]  *Id*. (citing *Energy Transfer Equity, L.P. v. Twin City Fire Ins. Co*., 2020 WL 5758027, at *6 (Del. Super. Ct. Sept. 28, 2020)).

[41]  *Id.* at 6.

[42]  *Id*. (citing *Energy Transfer*, 2020 WL 5758027, at *6).

[43]  *Id*. at 7. Because Lima's claims are dismissed on other grounds, the Court does address the issue of standing—an issue it might usually first turn to.

[44]  Sellers' Mot. to Dismiss at 8.

Lima's opposition to Sellers' motion to dismiss is quadripartite. *First*, Lima insists that it does have standing to bring its breach of representation claim (Count II) as its claim is ripe and it has already incurred a loss.[45] Specifically, Lima contends that, *if* the representation that the TechMah IP did not infringe on anyone else's intellectual property was false, it was false at the time it was made and Lima incurred a loss at the time of contracting because their investment was worth less than what was represented.[46] Lima argues that, *if* they incurred a loss on September 5, 2018, their September 4, 2020 claim was not premature.[47] Also, according to Lima, as the Indemnity Letter contains a provision that terminates indemnification for breaches of representations on September 5, 2020, it would be unfair to dismiss its breach of representation claim brought one day before that expiration date.[48]

*Second*, Lima submits that its third-party indemnification claim (Count I) should be stayed and not dismissed because Delaware courts regularly exercise their authority and discretion to manage their own dockets and will stay a third-party

---

[45]   Lima's Opp'n to Mot. to Dismiss at 6-7, Mar. 15, 2021 (D.I. 32).

[46]   *Id.* at 5.

[47]   *Id.* at 6 (citing *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *8 (Del. Ch. Jan. 24, 2005) for the proposition that breach of representation claims accrue when the false representation is made; and *GRT, Inc. v. Marathon GFT Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011) for the proposition that "because representations and warranties about facts pre-existing, or contemporaneous with, a contract's closing are to be true and accurate when made, a breach occurs on the date of the contract's closing and hence the cause of action accrues on that date.").

[48]   *Id.* at 7.

indemnity claim until the resolution of the underlying dispute.[49] In Lima's view, Sellers failed to distinguish those cases in which such stays have been granted or to address the concern of judicial economy.[50]

*Third*, Lima contends that it does plead valid contract claims as it properly alleged the elements of its breach-of-representations claim (Count II) and the elements of its third-party indemnification claim (Count I).[51] With respect to its breach-of-representation claim, Lima maintains that it properly pled each required element as it alleged that: (1) Sellers represented that the TechMah IP did not infringe on any other intellectual property; (2) *if* Zimmer's potential claims are true, that representation is false; and (3) that, *if* the representation is false, then Lima has incurred a loss.[52]

With regards to its third-party indemnity claim, Lima contends that it properly pled this claim as it alleged: (1) the existence of an indemnity agreement that covers losses arising from claims to ownership of any TechMah IP;[53] (2) that Zimmer

---

[49] *Id.* at 8-9 (citing to *Energy Transfer*, 2020 WL 5758027, at *6-7; *Yellow Pages*, 2015 WL 358279, at *4; *Brenner*, 2012 WL 252286, at *4-7; *Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 397 (Del. Ch. 2009)).

[50] Lima's Opp'n to Mot. to Dismiss at 9-13.

[51] *Id.* at 14-17.

[52] *Id.* at 14; Compl. ¶¶ 1, 13, 18, 28. *See also* Lima's Opp'n to Mot. to Dismiss at 16 n.1 (Lima requests that the Court allow it to amend the Complaint if it finds that Lima should have phrased the Complaint to unequivocally state Sellers' representations were false).

[53] Lima's Opp'n to Mot. to Dismiss at 16; Compl. ¶ 12.

asserted a claim to ownership over certain TechMah IP;[54] and (3) that Lima is entitled to reimbursement for any losses from that claim.[55] Lima rejects Sellers' suggestion that it needed to plead that it presented indemnifiable losses to the defendants, and that defendants refused to indemnify because the Indemnity Letter contains no language requiring it to tender its claim. And, if that was required then Lima has tendered a timely claim by filing its complaint here in this action.[56]

*Last*, Lima argues that its claims are timely as this Court ordered earlier that this case "shall be deemed filed on September 4, 2020."[57] Lima says that the September 5, 2020 deadline doesn't apply to its claim for third-party indemnification per the terms of the Indemnity Letter.[58]

In their reply to Lima's opposition, Sellers say there is no claim for breach of representation. Rather, they say, Count II "asserts a contingent claim for breach of contractual indemnity 'if Zimmer prevails on the merits of' a non-existent lawsuit."[59] Further, Sellers point out critical discrepancies between the assertions made in

---

[54] Lima's Opp'n to Mot. to Dismiss at 16-17; Compl. ¶¶ 16-17.

[55] Lima's Opp'n to Mot. to Dismiss at 17; Compl. ¶¶ 22-23.

[56] Lima's Opp'n to Mot. to Dismiss at 17.

[57] *Id.*

[58] *Id.* at 17-18; Indemnity Letter § (B).

[59] Sellers' Reply Br. at 2, Mar. 30, 2021 (D.I. 35) (emphasis omitted).

Lima's Opposition Brief and what Lima pleads in its Complaint; specifically, that Lima never plead in its Complaint that it had already been damaged, it did so only in briefing on this dismissal motion.[60]

## IV.  APPLICABLE LEGAL STANDARDS

### A. MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Whenever it appears by suggestion of the parties or otherwise that the Court lacks subject matter jurisdiction over a claim, the Court must dismiss that claim.[61] In considering a jurisdictional challenge, the Court "need not accept [a plaintiff's] factual allegations as true and is free to consider facts not alleged in the complaint."[62] Accordingly, whereas the movant "need only show that the Court lacks jurisdiction,"[63] the non-movant bears the "far more demanding" burden of "prov[ing]" the Court's jurisdiction exists.[64]

---

[60]  *Id*. at 3.

[61]  Del. Super. Ct. Civ. R. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court *shall* dismiss the action.") (emphasis added).  *See Webster v. Brosman*, 2019 WL 5579489, at *1 (Del. Super. Ct. Oct. 29, 2019) ("Superior Court Rule of Civil Procedure 12(h)(3) mandates the Court to dismiss a claim if it appears from the record that the Court does not have jurisdiction over the claim.").  *See generally* Del. Super. Ct. Civ. R. 12(b)(1).

[62]  *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (internal quotation marks omitted).

[63]  *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Ct. Dec. 15, 2015), *aff'd*, 2016 WL 4938890 (Del. Sept. 16, 2016).

[64]  *Appriva*, 937 A.2d at 1284 n.14 (internal quotation marks omitted).

## B. RULE 12(b)(6) MOTIONS TO DISMISS

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[65] In resolving a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[66] The Court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[67] Nor must the Court adopt "every strained interpretation of the allegations" the plaintiff proposes.[68] Still, even with those cautions in mind, Delaware's pleading standard is "minimal."[69] Dismissal is inappropriate unless "under no reasonable interpretation

---

[65] Del. Super. Ct. Civ. R. 12(b)(6).

[66] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[67] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[68] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[69] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

of the facts alleged could the complaint state a claim for which relief might be granted."[70]

"Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss."[71] But the Court may consider documents or exhibits outside the pleadings when they're "integral to a . . . claim and incorporated into the complaint."[72]

## C. MOTIONS TO STAY

In a circumstance such as this, a stay is a case-management tool. Hence, there is no "right" to one.[73] Granting a stay is a discretionary enterprise and derives from a court's inherent power to control its docket.[74] And "a stay of action . . . is not

---

[70] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility . . . .'").

[71] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68 (Del. 1995).

[72] *Windsor I, LLC v. CWCap. Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020); *see also Malpiede*, 780 A.2d at 1083 ("[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law.").

[73] *E.g.*, *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 4516645, at *2 (Del. Ch. Oct. 8, 2008) ("The granting of a motion to stay is not a matter of right, but rather rests with the sound discretion of the court.").

[74] *See Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012) (when commenting on the Court of Chancery's authority to enter a voluntary dismissal: "Delaware trial courts have inherent power to control their dockets.").

-17-

something that is subject to mandatory rules of law."[75]  Still, the Court must exercise its judgment on a stay request through a well-articulated process.[76]

A stay involves interest balancing.  In deciding whether to grant a stay, a court typically balances "the interests of the plaintiff, [and] the interests of the defendant, all with an eye toward the efficient and fair administration . . . of justice."[77]  Those interests and goals, in turn, usually are informed by a court's "responsibility to order" the proceedings before it.[78]  But when a litigant moves to stay simply because a dispositive motion has been filed, a court approaches deferral more "carefully."[79]

---

[75]  *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.*, 1996 WL 33167168, at *8 (Del. Ch. June 6, 1996).  *See Paolino*, 985 A.2d at 397 (Del. Ch. 2009) (observing that a court's discretion to grant a stay should be informed by "efficiency and simple common sense").  *See generally Unbound*, 251 A.3d at 1030 ("Delaware courts enjoy wide discretion to manage their affairs in a manner that promotes economies of time and effort for the court, litigants, and counsel." (cleaned up)).

[76]  *Conoco Inc. v. El Paso Nat. Gas Co.*, 1989 WL 44036, at *1 (Del. Ch. May 1, 1989).  *See also In re Marta*, 672 A.2d 984, 987 (Del. 1996) (reviewing decision on motion to stay for abuse of discretion).

[77]  *Carlton Invs.*, 1996 WL 33167168, at *9.

[78]  *Id.* at *8.  *See In re Montes-Galindez*, 2020 WL 2393357, at *1 (Del. May 11, 2020) ("In the absence of a clear showing of an arbitrary refusal or failure to act, this Court . . . will not compel a trial court to perform a particular judicial function, to decide a matter a particular way, or to dictate control of its docket." (alteration and internal quotation marks omitted)).  *See generally Avee, Inc. v. Upstack Techs., Inc.*, 2019 WL 1643752, at *8 (Del. Super. Ct. Apr. 12, 2019) ("[T]he Court has inherent power to . . . maintain orderly adjudication of claims.").

[79]  *Schick, Inc. v. Amalgamated Clothing & Textile Workers Union*, 1987 WL 12450, at *2 (Del. Ch. June 18, 1987); *cf. Wallace v. Durwood*, 1993 WL 455307, at *3 n.5 (Del. Ch. Nov. 2, 1993) (Observing that "[t]here is no hard and fast rule that affords [a party] a right to a stay simply because a case dispositive motion has been filed." (alteration and internal quotation marks omitted)).

A stay of any aspect of litigation shouldn't be granted automatically; it should be granted only if the opponent wouldn't be prejudiced by the delay and considerations of expense and litigation economy predominate.[80] And when resolving whether to stay or not, the Court "must make a particularized judgment evaluating the weight that [purported] efficiency should be afforded . . . and the significance of any risk of injury to [a party] . . . that might eventuate from a stay."[81] By consequence, a movant must justify any stay request—no matter its effect or underlying purpose—with a showing sufficient practical and appropriate reasons.[82]

---

[80]   *Schick*, 1987 WL 12450, at *2.

[81]   *In re McCrory Parent Corp.*, 1991 WL 137145, at *1 (Del. Ch. July 3, 1991).

[82]   *E.g. Pensionskasse Der ASCOOP v. Random Int'l Holding Ltd.*, 1993 WL 35977, at *1 (Del. Ch. Jan. 26, 1993) ("The burden is on one who seeks to delay discovery to establish some practical reason why discovery should be stayed."); *also Orloff v. Shulman*, 2005 WL 333240, at *1 (Del. Ch. Feb. 2, 2005) (implying that the movant's burden is not met when the stay would not be "appropriate under the circumstances").

## V. DISCUSSION

### A. LIMA'S CLAIMS MUST BE DISMISSED.

### 1. The Third-Party Indemnity Claim (Count I) is Unripe.

Ripeness is a jurisdictional question.[83] And judicial caution guides its answer. Adjudicating a matter before its facts have ripened "not only increases the risk of an incorrect judgment in the particular case, but risks, as well, an inappropriate or unnecessary step in the incremental law building process itself."[84] Courts, then, decline jurisdiction over disputes that have not yet "matured to the point where the [claimant] has suffered or will imminently suffer injury."[85]

A case "will be deemed ripe if litigation sooner or later appears to be unavoidable and where the material facts are static."[86] But "[a] dispute will be deemed not ripe where the claim is based on uncertain and contingent events that may not occur, or where future events *may* obviate the need for judicial

---

[83] *B/E Aerospace, Inc. v. J.A. Reinhardt Holdings, LLC*, 2020 WL 4195762, at *1 (Del. Super. Ct. July 21, 2020).

[84] *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987); *accord Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 480 (Del. 1989); *see XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) ("The underlying purpose of the [ripeness] principle is to conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking." (citing *Stroud*, 552 A.2d at 580)).

[85] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 816 (Del. 2018).

[86] *XL Specialty*, 93 A.3d at 1217.

intervention."[87]  Ascertaining the difference requires a "claim-by-claim" analysis.[88] And one bringing any given claim bears the burden of proving it is ripe.[89]

Lima hasn't carried that burden.  Lima's claim for indemnification is wholly based on uncertain and contingent events that may not occur.  Indeed, Lima seeks coverage for "losses arising from the Zimmer Claims, *if* Zimmer prevails on them."[90] The Zimmer "Claims", however, are not yet claims.  Nothing has been filed.  To be sure, the Zimmer Letter did use some threatening language: "[w]e will pursue other avenues of protecting our intellectual property if we do not hear from you by September 16, 2020."[91]  But a threat, without more, neither renders litigation unavoidable nor establishes static material facts.  So Lima has failed to plead that Zimmer has done anything yet.  And so, its indemnification claim isn't ripe.

To illustrate, there are at least three "contingent events that may not occur," but must occur, before Lima may seek indemnification from Sellers.[92]  *First*, and most obviously, Zimmer must sue.  *Second*, Zimmer must win.  *And third*, Sellers

---

[87]  *Id.* at 1217-18 (emphasis added) (internal quotation marks and citation omitted).

[88]  *B/E Aerospace*, 2020 WL 4195762, at *1 (internal quotation marks omitted).

[89]  *Id.*

[90]  Compl. ¶¶ 4, 22 (emphasis added).

[91]  Zimmer Letter at 3.

[92]  *XL Specialty Ins.*, 93 A.3d at 1217-18.

must refuse payment. Not a single one of those things had occurred when Lima filed its Complaint on September 4, 2020. And not a single one has occurred since.

Still, Lima protests that Sellers' opposition to this action is itself a refusal to indemnify.[93] Indemnify what? There's no loss yet. Even if one were able to divine some present need for judicial intervention, "future events may obviate th[at] need."[94] Zimmer may decide to not bring an action against Lima at all. (It's been almost a year and Zimmer hasn't so far.) If Zimmer does, Lima may prevail on that claim. Or, Zimmer may "settle th[at] matter amicably" as it "hope[s]" to do.[95] One last thing—if Lima does incur losses for which it is entitled to indemnification, Sellers may acquiesce to that request. Any one of those events would obviate the need for judicial intervention.[96]

Put simply, Lima's Count I is unripe.

## 2. The Breach of Representations Claim (Count II) is Unripe.

For similar reasons, Lima's breach of representations claim also hasn't ripened. Lima's Complaint prefaces each of its material allegations with "[i]f

---

[93]   Lima's Opp'n to Mot. to Dismiss at 13.

[94]   *XL Specialty Ins.*, 93 A.3d at 1217-18.

[95]   Zimmer Letter at 3.

[96]   Lima doesn't actually contend that its indemnification claim is ripe. Instead, Lima insists that the claim should be stayed until it does ripen. Lima's Opp'n to Mot. to Dismiss at 8-9. For reasons that will be explained below, the Court will not stay this action.

Zimmer prevails on the merits of the Zimmer Claims."[97]  By hedging its allegations in this way, Lima ties its claim to the same "uncertain and contingent events that may not occur" as before.[98]  So this claim isn't ripe either.

Undeterred, Lima contends that the breach of representations claim should be treated differently because, unlike the indemnification claim, a breach of representations occurs at the time of contracting.[99]  Sure, this is an accurate statement of the law.  And that might matter, if Lima ever actually alleged in its Complaint that Sellers did breach their representations.  But Lima never does.  And its later attempts to defend this deficiency doesn't rescue this claim.

In its opposition brief—where Lima first raised the suggestion of already-incurred losses—the closest Lima comes to an affirmative allegation is this: "assuming Zimmer's claims are true, [Lima] has already incurred a loss."[100]  Lima says that this sort of non-committal pleading is a privilege it is entitled to because it must protect its interests in potential future litigation.[101]  It isn't.[102]

---

[97]  Compl. ¶¶ 27-29.

[98]  *XL Specialty Ins.*, 93 A.3d at 1217-18.

[99]  Lima's Opp'n to Mot. to Dismiss at 6.

[100]  *Id.* at 7.

[101]  *Id.* at 14-16.

[102]  And not one authority cited by Lima as support for its notion that such irresolution is tolerable stands for any such thing.  Rather they merely: (1) discuss third-party actions—when this is an action in which the battle is joined between just two opposing parties, *see e.g., Wolf v. Toyota*

So, perhaps recognizing its tenuous position, Lima suggests that should the Court conclude its vacillation dooms its as-drafted claims, then it be given "permission to amend its Complaint accordingly."[103] In relevant part, this Court's Civil Rule 15(a) instructs, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party."[104] The rule continues, "leave shall be freely given when justice so requires."[105] So, does justice require that Lima be given the opportunity to amend now? It doesn't.

---

*Motor Corp.*, 2013 WL 6596833 (Del. Super. Ct. Dec. 9, 2013); *Burris Foods, Inc. v. Deloitte & Touche*, 1991 WL 215896 (Del. Super. Ct. Sept. 26, 1991); *Jardel Co., Inc. v. Lakewood Builders, Inc.*, 1987 WL 11445 (Del. Super. Ct. May 12, 1987); *Kilgore v. R.J. Kroener, Inc.*, 2002 WL 480944, at *5 n.7 (Del. Super. Ct. Mar. 14, 2002); *Slocum v. Ford Motor Co.*, 314 N.W.2d 546, 549 (Mich. Ct. App. 1981); *Schenectady Steel Co. v. Guardian Life Ins. Co. of Am.*, 300 A.D.2d 854, 855-56 (N.Y. App. Div. 3d Dep't 2002); (2) fail to address pleading standards at all but reflect only on a defendant's right to implead third parties, *see*, *e.g.*, *Wolf*, 2013 WL 6596833; *Burris Foods*, 1991 WL 215896; *Jardel,* 1987 WL 11445; or, (3) explain the certain protections inconsistent claims might be granted in third-party actions, *see*, *e.g.*, *Kilgore*, 2002 WL 480944, at *5 n.7 (noting that an affirmative pleading on an indemnification issue can't be used as an "admission against interest" by the underlying plaintiff); *Slocum*, 314 N.W.2d at 549 (standing for the proposition that, in a third-party action, "one of two inconsistent pleas cannot be used as evidence in the trial of the other"); *Schenectady Steel*, 300 A.D.2d at 855-56 ("Guardian's denial of an agency relationship. . . should [not] estop it from asserting to the contrary in the third-party action."). Put simply, Lima here attempts to incant some recognition of the protections provided for inconsistent, affirmative claims that might be made in pleadings to divine a right to avoid making any affirmative claims in pleadings. There is no such right.

[103] Lima's Opp'n to Mot. to Dismiss at 16 n.1.

[104] Super. Ct. Civ. R. 15(a).

[105] *Id.*

True, Rule 15(a) does counsel the granting of amendments "freely." But "freely" doesn't mean without exception. Indeed, while it is well-established that leave to amend under Rule 15(a) should be given liberally, the Court will not be so openhanded where there's "evidence of undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies, prejudice, futility, or the like."[106] More than one of these considerations are present here.

If an amendment would produce a claim without the Court's subject matter jurisdiction, it is futile.[107] Assume Lima amends its complaint to unequivocally state that the defendants' representations are in some way false. That would not necessarily spur Zimmer into action. Sellers, then, still haven't pled the loss required. In other words, this claim would still be unripe. So the amendment would in substance be futile as to the representation claim.

Too, for the usual indemnification claim to be ripe, it must at the very least be reasonably conceivable that the indemnitee knows it must be indemnified *and* how much it needs to be indemnified for.[108] Otherwise, without a loss and cost, the

---

[106] *Parker v. State*, 2003 WL 24011961, at *3 (Del. Super. Ct. Oct. 14, 2003).

[107] *See Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 7803923, at *4 (Del. Super. Ct. Nov. 1, 2017) ("Permitting this amendment would be futile, because the Court would lack subject matter jurisdiction over the claim.").

[108] *Hill v. LW Buyer, LLC*, 2019 WL 3492165, at *10 (Del. Ch. July 31, 2019). *See also In re Insys Therapeutics Inc. Derivative Litig.*, 2017 WL 5953515, at *3 (Del. Ch. Nov. 30, 2017) (distinguishing ripe claims from those in which the "full extent of damages. . . cannot be known until the resolution of the [underlying matter].").

complainant (here Lima) "could seek indemnification—and reap a windfall—for speculative Losses that it never actually suffered. Such a payment would be antithetical to the concept of indemnification."[109]

Indeed, in its Motion to Stay, Lima wrote, "Lima recognizes that the extent of its liability to Zimmer *and thus its damages in this action* are not calculable unless and until the Zimmer Claims are resolved."[110]  To reiterate, Zimmer has bought <u>no</u> claims.  So not only are any potential damages speculative, but any potential danger of Lima suffering damages is also speculative.  Even giving Lima the benefit of the doubt,[111] its breach of representations claim can't be deemed ripe now nor leave to amend warranted now.

Accordingly, this case presents the rare confluence of circumstances where the Court cannot liberally grant a Rule 15(a) amendment.  Lima's argument that Count

---

[109]  *Hill*, 2019 WL 3492165, at *10.

[110]  Lima's Mot. to Stay ¶ 9 (emphasis added).

[111]  Which is not so easy here.  While Lima, when finally pressed at argument, has tried to reverse its position by alluding to some sort of independent breach of representations theory that is untethered to Zimmer and positing a calculability of its damages—either on its own loss of inherent value of the IP or due to Zimmer's potential success—leave to amend would still be denied because withholding those facts to gain tactical advantage smacks of bad faith.  *Krauss v. State Farm Mut. Auto. Ins. Co.*, 2004 WL 2830889, at *6 (Del. Super. Ct. Apr. 23, 2004); *Delta Eta Corp. v. Univ. of Delaware*, 2007 WL 4578278, at *6 (Del. Super. Ct. Dec. 27, 2007).  At very least, the withholding of any suggestion of such a recast breach theory until argument resembles the undue delay or dilatoriness that would counsel against a Rule 15(a) grant—particularly in these circumstances where the commodity of time is precisely that which Lima is trying to purchase.  *See* n.81, *supra.* (the Court must consider the practicality and appropriateness of the reasons offered for any stay of any part of the litigation process).

II is ripe and stands on its own merits is both untimely and unconvincing. Lima's bleak reality is that the merit of Count II is contingent upon a finding that the TechMah IP does in fact infringe on Zimmer's intellectual property. Without this, there would be no breach. Further, such finding requires the resolution of Zimmer's feared infringement claims—which, as discussed above, don't exist even after close to a year has passed. And as the complaint stands, there is no discernable standalone breach of representation claim to be resolved; there's only the worry of a hypothetical Zimmer infringement claim. Given all this, justice doesn't require leave to amend be granted at this point.[112]

In a last gasp, Lima says it would be "unfair" for the Court to dismiss its breach of representations claim as premature.[113] As support for that sentiment, Lima points out that the contractual deadline for bringing such a claim lapsed last September, precluding an opportunity to refile should the claim ever ripen.[114] But Lima bargained for the Indemnity Letter's deadline knowing this might be the result.

---

[112] Although not controlling here, Chancery Court Rule 15(aaa) is somewhat instructive. Under that rule, the opponent of a motion to dismiss has two choices: stand on the complaint as-is and fight its irremediable dismissal or amend the complaint and perhaps champion it another day. Ch. Ct. R. 15(aaa). *See generally Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del. 2006). That rule reflects a commonsense approach to judicial efficiency and a sensible recognition that justice simply doesn't require that a court allow the complainant to have it both ways.

[113] Lima's Opp'n to Mot. to Dismiss at 7.

[114] *Id.*

Delaware courts are loath to disturb bilaterally-negotiated terms.[115] And "[t]he presumption that the parties are bound by the language of the agreement they negotiated applies with even greater force when the parties are sophisticated entities that have engaged in arms-length negotiations."[116] So their contractual limitation periods will be enforced if they are reasonable.[117]

There seems nothing unreasonable about the parties' deadline here. And Lima hasn't suggested otherwise. Instead, Lima just invites the Court to rewrite the deadline it accepted. The Court won't do that.[118] "Parties have a right to enter into

---

[115] *Unbound*, 251 A.3d at 1031; *accord Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 761639, at *5 (Del. Super. Ct. Feb. 26, 2021). *See Change Cap. Partners Fund I, LLC v. Volt Elec. Sys., LLC*, 2018 WL 1635006, at *4 (Del. Super. Ct. Apr. 3, 2018); *ABRY Partners V, L.P. v. F & W Acquisition, LLC*, 891 A.2d 1032, 1059-61 (Del. Ch. 2006)).

[116] *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *9 (Del. Ch. Nov. 2, 2007), *aff'd*, 2009 WL 4154356 (Del. Nov. 24, 2009).

[117] *Shaw v. Aetna Life Ins. Co.*, 395 A.2d 384, 386 (Del. Super. Ct. 1978). *See Bonanza Rest. Co. v. Wink*, 2012 WL 1415512, at * 1 (Del. Super. Ct. Apr. 17, 2012) ("A contractual provision that reasonably abbreviates the time for filing a claim is enforceable because it enhances public policy in favor of resolving claims."); *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *12 (Del. Ch. Sept. 18, 2020). *See also Wind Point Partners VII-A, L.P. v. Insight Equity A.P. X Co., LLC*, 2020 WL 5054791, at *8 (Del. Super. Ct. Aug. 17, 2020) ("Delaware courts have interpreted contractual provisions that limit the survival of representations and warranties as evidencing an intent to shorten the time period in which a claim for breach of those representations and warranties may be brought.").

[118] *See, e.g.*, *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) (Delaware courts cannot "rewrite the contract to appease the party who later wishes to rewrite a contract he now believes to have been a bad deal."); *accord Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 505 n.96 (Del. 2019).

good and bad contracts, the law enforces both."[119]   That Lima now regrets the deadline doesn't convert an unripe claim into a justiciable controversy.

Count II is unripe and dismissed.

### 3. Even if Ripe, Count II Would Fail.

Even if Count II were ripe, Lima still fails to state a claim.  The Court "will dismiss [a claim] if the non-movant fails to plead specific allegations supporting an element of its claim or where no reasonable, *i.e.*, unstrained, interpretation of the facts alleged reveals a remediable injury."[120] Though Lima vacillates between a breach-of-contract claim and a fraud claim in its Complaint and Opposition Brief,[121] an element of both of those actions is that the plaintiff was damaged.[122] As discussed, however, Lima failed to plead any damages in its Complaint.

---

[119] *Nemec*, 991 A.2d at 1126; *accord Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 881 n.2 (Del. 2015).

[120] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Ct. Jan. 13, 2021).

[121] *Compare* Compl. ¶ 27 ("If Zimmer prevails on the merits of the Zimmer Claims, then Sellers have not performed their obligations pursuant to the Indemnity Letter"), *with* Lima's Opp'n to Mot. to Dismiss at 14 ("[The elements for Lima's breach of representations claim] are that the defendant made a false representation and that, as a result, the plaintiffs acquired a less valuable good than it agreed to purchase.").

[122] *See generally VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (enumerating breach-of-contract elements to include damages); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (enumerating fraud elements to include damages).

That is why Lima uses its Opposition Brief to try to excavate some damages element.[123] But it hits some impenetrable strata. First, the allegations Lima cites say nothing about damages.[124] Given those unilluminating allegations, it would be a strain[125] to credit Lima's assertion that "it has already incurred a loss."[126] Second, the Court cannot treat a parties' brief as a surrogate for its pleadings.[127] And last, in any event, a party cannot amend its pleadings with an opposition or reply brief.[128] To the extent Lima is attempting to reintroduce its failed amendment arguments in

---

[123] *See* Lima's Opp'n to Mot. to Dismiss at 14 ("[Lima] alleged that it [*sic*], if the representation is false, then it has already incurred a loss since the breach caused it to invest in a less valuable asset than the one it agreed to purchase." (citing Compl. ¶¶ 1, 28)).

[124] *See* Compl. ¶ 1 ("This action arises out Lima's investment in Seller's company, Techmah Medical LLC ('Techmah'). Techmah's principal assets are technologies that aid doctors in performing surgeries on shoulders and knees (the 'Techmah IP')"); *id.* ¶ 28 ("If Zimmer prevails on the merits of the Zimmer Claims, then Sellers materially breached their obligations pursuant to the Indemnity Letter by falsely representing that Techmah owned the intellectual property identified therein and that Techmah could use that intellectual property free of infringement claims.").

[125] *But see Malpiede*, 780 A.2d at 1083.

[126] Lima's Opp'n to Mot. to Dismiss at 14.

[127] *See In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 68 (instructing courts to limit their 12(b)(6) review to the pleadings); *cf. Windsor*, 238 A.3d at 873 (widening consideration to matters "integral to . . . a claim and incorporated into the complaint").

[128] *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *17 n.177 (Del. Super. Ct. Oct. 25, 2018). *See also Koloff v. Reston Corp.*, 1992 WL 236943, at *1 (Del. Ch. Sept. 16, 1992) (holding that "the Court may not rely on matters outside the pleadings" when reviewing a 12(b)(6) motion.); *Lucas v. Hanson*, 2014 WL 7235462, at *2 (Del. Ch. Dec. 19, 2014) (same); *Patel v. Sunvest Realty Corp.*, 2018 WL 4961392, at *8 (Del. Super. Ct. Oct. 15, 2018) (same).

the guise of an interpretation of its as-drafted Complaint, those efforts cannot elude Rule 15 for the reasons discussed above.

Count II fails to plead damages and so fails to state a claim and must be dismissed.

## B. LIMA IS NOT DUE A STAY.

Given this decision's ripeness analysis, Lima's stay motion should be moot. There is no intuitive reason why a case that is barred by a contractual limitations period and otherwise fails to state reasonably conceivable damages should be stayed. For completeness, however, the Court will address why it should not and will not grant Lima a stay.

While it vainly protested otherwise at argument,[129] Lima's lawsuit really is just a placeholder.[130] So Lima's stay arguments devolve to a request for the Court to keep the Sellers on the hook until the Zimmer Claims—which have no sign of arriving—are brought. Stays, though, are about all the parties, not just Lima. It would not only be inefficient for the Court but unjust to the Sellers to place them in

---

[129] Oral Arg. Tr. at 11-13, Apr. 20, 2021 (D.I. 45).

[130] *See* Lima's Mot. to Stay ¶ 13 ("Lima filed this action to avoid being barred by the limitation period in the Indemnity Letter.").

a litigation limbo to await for an obligation that never may trigger.  Stays in such circumstances can't be countenanced.[131]

For example, the claimant in *LLPAS Representative v. ATH Holding Co.*,[132] employed a tactic similar to Lima's.  The indemnitee attempted to extend the indemnification deadline for an untimely claim by arguing it "related back" to a timely one.  The Court of Chancery rejected that effort, explaining that "indemnitees may not assert 'placeholder' claims against escrow funds for which details are provided only after the due date for those claims have expired."[133]  Similarly, in *Winshall v. Viacom International*,[134] the indemnitee noticed potential claims against it just days before the indemnification deadline.[135]  It then sought to "reserve the right to seek indemnification for any other claims . . . that may result due to the

---

[131] *LPPAS Rep., LLC v. ATH Holding Co., LLC*, 2020 WL 7706937, at *7 (Del. Ch. Dec. 29, 2020); *i/mx Info. Mgmt. Sols., Inc. v. Multiplan, Inc*, 2014 WL 1255944, at *12 (Del. Ch. Mar. 27, 2014); *Winshall v. Viacom Int'l Inc.*, 2012 WL 6200271, at *8 (Del. Ch. Dec. 12, 2012), *aff'd*, 76 A.3d 808 (Del. 2013).

[132] 2020 WL 7706937 (Del. Ch. Dec. 29, 2020).

[133] *LPPAS Rep., LLC*, 2020 WL 7706937, at *8.  The Court does not see the lack of an escrow fund as a critical distinction.  Funds often are escrowed for indemnification, and then released as a true-up of the sale price when the period expires.  So, where the disputed funds are held is unimportant in determining whether or not the claim to those funds had been timely.  What is more important is whether or not the indemnitee can provide the details of their claim before the indemnification period terminates.

[134] 2012 WL 6200271 (Del. Ch. Dec. 12, 2012).

[135] *Id.* at *3.

[indemnitor's] breach of its representations and warranties" via a letter to the indemnitor.[136] Again, the Court of Chancery rejected that artifice, reasoning that the indemnitee's notice "would constitute a unilateral rewriting of the contract and is impermissible."[137] Just so here. A stay effectively would amount to a contractual rewrite. And a party cannot use litigation to extract terms it failed to secure at the bargaining table.

To do so via a stay would wrongfully deprive Sellers of a protection they bargained for. If nothing else, all the Indemnity Letter's "representations and warranties and all related rights to indemnification" terminated on September 5, 2020.[138] Staying this case until the resolution of such claims that would be brought nearly a year after that deadline, if ever, would be unjust. The contract must control.[139]

Perhaps recognizing this, Lima last attempts to separate this placeholder action from other unripe actions by pointing to incidents of Delaware courts staying

---

[136] *Id.*

[137] *Id.* at *8.

[138] Indemnity Letter § (B).

[139] *See*, *e.g.*, *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) ("Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." (internal quotation marks omitted)).

indemnity actions.[140]  But those cases were stayed in favor of active, underlying proceedings that potentially could trigger coverage.[141]  So the injury in each was truly "imminent."[142]  Not here.  There is no practical reason to vary the parties' express contractual terms with a risk of liability that may never attach.  Penning that substantial alteration by stay would strip Sellers of the precise protection—a shorter temporal exposure to liability—they bargained for.  And that the Court will not do.

## VI.  CONCLUSION

Lima's claims are contingent on circumstances that are not now present and that Lima can't assure the Court will ever come to pass.  As such, Lima's claims are neither ripe nor justiciable.  Because Lima's claims are not justiciable and the element of damages in Count II is not supported by any of the complaint's allegations, Lima's claims fail to state a claim for which relief is a possibility.

---

[140]  Lima's Mot. to Stay ¶¶ 11-12; Lima's Opp'n to Mot. to Dismiss at 8-9.

[141]  *Energy Transfer Equity*, 2020 WL 5758027, at *3-4; *Yellow Pages*, 2015 WL 358279, at *2; *Brenner*, 2012 WL 252286, at *2-3; *Paolino*, 985 A.2d at 394-95. The existence of an underlying matter is a critical distinction because far fewer contingencies remain once the underlying litigation has commenced.  Whether the action will be brought, whether the action will be settled, whether the indemnitor will agree to indemnify, and whether the indemnitee will prevail are all much more determinable after litigation has commenced.  Additionally, when there is underlying litigation, the staying court knows that the stayed action will either ripen or become moot within a fixed timeframe.  Here, there is no indication of when, if ever, Zimmer would bring a claim, let alone when that claim would be resolved.

[142]  *Town of Cheswold*, 188 A.3d at 816.

-34-

Staying this action to allow Lima's claims to ripen would wrongly remove the termination of representations and warranties clause in the Indemnity Letter.

For those reasons, Lima's Motion to Stay must be **DENIED**, and Seller's Motion to Dismiss must be **GRANTED**.

**IT IS SO ORDERED.**

_____
Paul R. Wallace, Judge

cc: All Counsel via File and Serve